## James Brown *against* Stephen Girard.

Protest of a master of a ship, evidence on a policy of insurance.
A warrant and survey in the admiralty, good evidence.
A vessel insured must in all respects be fit for the trade wherein she is employed, and the *onus probandi* of seaworthiness, generally lies on the insured: but where the loss is fairly attributable to sea damage, or any other unforeseen misfortune, the proof lies on the insurer who sets it up as a defence.

THIS cause came on again to trial, a new trial having been ordered at the last December term.

The suit was brought on two policies of insurance ; the one on goods laden on board the schooner Eagle, at and from Eden- ton in North Carolina to Cape Nichola Mole ; the other on the schooner herself, during the voyage.   ,

The plaintiff offered in evidence, the protest of Orlando Dane, the master of the schooner, taken in Philadelphia on the 12th June 1797, ten days after the subscription of the two policies, tending to shew that the vessel was forced by winds and weather into this port.

*The defendant's counsel objected thereto.   We rest [*116 our defence on the deviation of the captain : instead of proceeding to Cape Nichola Mole, according to the terms of the

[Brown *v.* Girard.]

policy, he came to the port of Philadelphia, and seeks by his own oath to excuse himself, under the pretence of a storm. If there be a recovery against the underwriter, the plaintiff cannot maintain a suit against the master : so that, in fact, the latter gives evidence in his own cause. The master is answerable for all negligences and irregularities, on the soundest principles of reason. Wesk. 179. He must proceed to the place of his destination without delay. Abbot 193, 4. Nothing can be more clear, than that the underwriters are discharged from all respon- sibility, whenever a deviation takes place. Park 335, 1st ed. The justification to the insured for leaving the direct track of the voyage, is founded on necessity and reasonable cause ; such as, to repair his vessel, to escape from an impending storm, to avoid an enemy, or to meet a convoy. Ib. 343. And in cases of deviation, the premium is not to be returned, because the risk has commenced. Ib. 362. In a question on a policy on goods, whether the ship was seaworthy or not, the owner of the ship was rejected as a witness, to prove that she was staunch, until released by the plaintiff. Peake Ni. Pri. 84. So in action against a master, for the negligence of a servant, the latter is not a competent witness to disprove the negligence, without a release. 4 Term Rep. 589. One is not a competent witness to impeach a security which he has given, though he is not inter- ested in the event of the suit. 1 Term Rep. 296.

The protest offered is a mere *ex parte* deposition, wherein the master seeks to justify his own conduct to his employers. Ex- perience teaches us, that we are not to expect rigid virtue in such cases. Even if there had been a cross examination, the deposition could not be received in evidence, unless by consent or rule of court. The reading of such papers is attended with great danger in mercantile life.

The plaintiff's counsel answered. The paper produced has been improperly styled a deposition ; it is an instrument per- fectly well known by the common usage of the country, and has always been received as evidence in our courts in questions of a commercial nature. 1 Dall. 6, 10, 318. Strict rules of legal evi- dence must not be applied to mercantile transactions. 1 Dall. 17. The exception, if established in the present instance, goes to all protests ; and thus an instrument of great utility in the commer- cial world, wisely calculated to prevent collusion, by recording events which have happened on the ocean, immediately on the ship's arrival in port, will be rendered wholly nugatory and use- *117] *less. The master is viewed as the common agent of the insurers, as well as the insured, and both parties are equally interested in his protest. To call for a release to the master by the owner, or a cross examination by the underwriter, is impracticable in most cases ; because protests are usually made in foreign ports, in the absence of both parties ; and in this particular, they are clearly distinguishable from depositions

[Brown *v.* Girard.]

in the usual course of justice, or witnesses testifying *viva voce.*
The practice of the courts of justice of this state in receiving
the protests of masters of vessels in evidence, is founded on
a presumed necessity, inferred from the nature of commerce.
Upon the same ground, a person is allowed to verify by his own
oath, his book of original entries, in order to substantiate a de-
mand for goods sold or work done, which is not allowable in
Great Britain.　Whether mariners usually adhere to the rules
of rigid virtue in their protests, can only be determined by the
jury under a careful review of the circumstances of each par-
ticular case.

By THE COURT.　Let the protest be read and be judged of by
the jury, agreeably to the uniform practice.　We consider this
matter very fully, on the motion for the new trial, and adhere to
the opinion we then delivered.　The usage is founded on the con-
venience of trade, and is attended with salutary effects.　If the
defendant's doctrine prevails, few losses will be recovered on poli-
cies of insurance.

The protest was then read, wherein the mate and one of the
seamen had joined.　It appeared thereby that the schooner sailed
from Edenton on the 4th June 1797, and struck heavily on Ocra-
cock bar, whereby she sprung a leak which afterwards increased.
The captain then bore away, and on the 8th June met a severe
gale of wind, which much augmented the leak, and necessitated
him to come to Philadelphia, as the next port.

The schooner was afterwards captured on the 4th August by
a French privateer and carried into Port de Paix in Hispaniola,
and there condemned in the admiralty on the 15th August, on
the ground of illicit trade ; because Cape Nichola Mole and Port
au Prince, were revolted colonies from France and in a state of
siege.

The defendant now rested his defence on the want of seawor-
thiness in the schooner, and offered in evidence a warrant from
the District Court of the United States for the district of Penn-
sylvania, dated 22d June 1797, to two persons, to survey the ves-
sel and make return of her state and condition ; and the return
made thereon.

*This was objected to, on the authority of Wright *v.*　[*118
Bernard, Park 436, that a return of survey is no evidence
to prove the vessel not to have been seaworthy, but merely to
shew a condemnation thereon.

The defendant's counsel insisted, that they were bound to pro-
duce the written document, as the best kind of evidence.　It was
a judicial proceeding under an act of congress.　By the act of
8th May 1792, the clerk of the court was impowered to take the
affidavits of the surveyors, relative to their reports.　The record
can only prove itself.

[Browne *v.* Insurance Co. of Pennsylvania.]

*Per Cur.* As records, the warrant and survey surely may be read. Their operation will be considered hereafter.

The reports of the surveyors, made on the 24th June, stated, that upon examination, they found the plank of the schooner much worm eaten about the stem and stern and at the stern post, and that her leaking was occasioned thereby, and not by running on Ocracock bar.

The testimony being closed on both sides, the counsel addressed the jury on the head of the seaworthiness of the schooner; and it was agreed, that if it was established, that she was not seaworthy, the policy on the goods, as well as on the vessel herself, was thereby annulled. Park 249, 263, 1st ed.

The court submitted it as a question of fact to the decision of the jury. They laid down the rule to be, that the vessel insured, must in all respects, be fit for the trade wherein she is employed; and generally, the proof lay on the party insured; but if it appears that the loss may be fairly imputed to sea damage, or any other unforeseen misfortune, and the underwriter means to defend himself on the ground of her not being seaworthy at the time of her departure, the burthen of the proof lies on him who sets it up as a defence. 2 Marsh 367, 8.

The jury found a verdict for the plaintiff for $836 and 82 cents.

A motion was afterwards made for a new trial, on the ground of the verdict being against evidence; but the court denied the motion.

Mr. Condy, *pro quer.*

Messrs. Ingersoll, and Rawle *pro def.*

Cited in 4 Y. 117 to show that protests of seamen have been uniformly received in evidence in Pennsylvania.