The cause stood continued nisi for advisement, and now, at this term, the opinion of the Court was delivered as follows, by
Sewall, J.
The plaintiff demands the amount of certain premiums due on a policy of insurance, of the ship Three Sisters, her cargo and freight, with the charges of the policy; for which he alleges the promise of the defendant’s intestate in his lifetime.
The state of facts, referred to the consideration of the Court, admits that the plaintiff, as an insurance-broker, being employed by the intestate, effected at his request, and for his account and use, the policy mentioned; which was proposed for the sum of 43,000 dollars, and subscribed for the sum of 30,150 dollars, in January, 1798, to insure the ship, her cargo and freight, distinctly valued by the policy, at and from Calcutta, to a port or ports of discharge in the * United States, for a premium of ] 2 per [ * 342 J cent. It is also admitted that the defendant’s intestate had the insurable interest specified in the policy ; and that, in applying for his insurance, the defendant communicated a letter from the master of the ship, informing that the ship was at Calcutta, in July, 1797, had commenced the lading of her homeward cargo, and would probably sail in the course of the next month.
It also appears that the ship mentioned was at Calcutta, and there commenced her lading in July, and sailed therewith in August, preceding the date of the insurance; but proving leaky as soon as she was at sea, and her leaks continuing to increase for some days, she was thought to be incapable of the voyage ; and the master thought it necessary to put back, and accordingly returned to Calcutta, where he arrived in October. There the cargo was relanded, and the ship surveyed and examined; when it was discovered that her bottom ar d keel were defective, and had been eaten by worms; and that this latent defect had occasioned the leaks. And the parties agree that the defect existed at the time the lading commenced, and when *302 the ship sailed from the port of Calcutta, and that the ship was not then seaworthy. It further appears that after this survey the ship underwent a complete repair, and in February, 1798, sailed again from Calcutta for the United States, and, before this action was commenced, arrived at the port of Boston in good safety.
This demand is resisted, upon the ground that the policy effected by the plaintiff never attached upon the property proposed to be insured, and that the insurance intended by the parties was rendered wholly void, by the want of seaworthiness, and insufficiency of the ship Three Sisters, when she sailed from Calcutta, in August, 1797; and that the voyage afterwards commenced was not within the terms of the policy, or was excluded by the representation of the insured, when the policy was effected.
The defence suggests this principal question, whether the policy, for which the agreed premium is demanded in this action, though prima facie a sufficient contract on the part of the underwriters, was, under the circumstances which have been stated, so [ * 343 ] far ineffectual and void, as to entitle the * assured, or his representative, to a return of the premium, or as this action is, to defeat the plaintiff’s demand, either in the whole, or for any part of the premium demanded.
The general rules of law, applicable to this question, are expressed by Lord Mansfield in the case of Tyrie vs. Fletcher (11). “Where the risk has not been run, whether that circumstance was owing to the fault, the pleasure, or the will of the insured, or to any other cause, the premium shall be returned.” And, “Where the risk is entire, if it has once commenced, there shall be no return of premium afterwards. These rules of the law merchant, adopted by the common law (12), are entirely conformable to the principles stated and explained by foreign jurists. Thus Boccus, in his treatise of insurances, after citing several cases of return-premium, maintains this fundamental maxim by a variety of authorities: “ Si non adest risicur-,, assecuratio non valet, nom non adest materia, in qua forma possit fundari” (13). And according to Emerigon, “ Insurance is a conditional contract, and conditional in two respects. 1. The contract fails, if before the commencement of the risk the voyage is interrupted, even by the act of the insured himself—the contract is revoked by a failure of the risk. And, 2dly, Insurers are liable only in the event of a loss, total or partial, occasioned by a peril of the sea ” {par fortune de mer). “ But insurers are not liable for a return *303 of premium after the risk has commenced, even if it should have but a momentary continuance” (14).
In the present case, the risk intended to have been insured is supposed to have failed, not by its being actually interrupted or withdrawn, before the insurance upon it commenced, but because it existed under circumstances which discharged the insurers, and in which no responsibility attached to them.
Foreign jurists consider insurers as not liable for losses or damages occasioned by the fault of the insured, his agents, or servants, or by an original defect of the thing insured, ex vitio rel et intrínseca ejus natura. It is upon this principle, * that, in [ * 344 ] cases of innavigability, importing, according to their jurisprudence, an entire failure or irremediable defect of the vessel, rendering her incapable of existing as a ship, or of fulfilling the purpose of her destination, the insurers are discharged, and are not liable either for the loss of the vessel, or the voyage insured, when they can prove her to have been in an innavigable state at sailing (15).
The same general principle was enforced or relied on for the discharge of the insurers in the cases of Lee vs. Beach, Oliver vs. Cowley, and Mills & Al. vs. Roebuck (16), the most noted cases which have been decided in England upon the doctrine of seaworthiness. By these decisions it is very clearly established that insurers are not liable, when the vessel insured perishes, or is condemned as incapable of proceeding, if the loss was occasioned by her own weakness or natural decay, without any extraordinary violence of the sea or winds, or other external misfortune; or where goods insured, having been laden on a vessel in a defective state, suffer damage, or are lost, in consequence of the total innavigability of the vessel, if occasioned by a defect existing "at the commencement of the risk. In each of these cases, the loss demanded by the insured proceeded immediately from the defective state of the vessel, upon which the insurance had been made; and the decisions are entirely consonant to the general principles of the marine law. But in these and other cases where the same' subject has been incidentally mentioned, the doctrine of the common law is stated to be, “ That in every insurance, whether on ship or goods, there is an implied warranty, that the ship shall be seaworthy when the risk commences; that is, that she c'»all be tight, stanch, and strong, properly manned, provided with all necessary stores, and in all respects fit for the intended voyage ” (17).
*304 It is upon this more enlarged doctrine or remedy of the common law, that questions of return-premium have been made in cases where a contract of insurance has been construed to have [ * 345 ] been dissolved by the innavigability or defective * state of the vessel insured, existing at the commencement ot the risk. Accordingly Marshall states a want of seaworthiness as presenting a case of return-premium : “ If the contract be void, on account of the non-compliance with any warranty, express or implied ; as if the ship do not sail on the day prescribed, or do not depart with convoy, ór be not seaworthy; and there be no. fraud imputable to the insured, he shall be entitled to a return of premium, because the contract never attached, and the risk therefore never commenced” (18).
In cases where the insurance has been defeated by the non-per formance of express warranties, limiting the time of sailing, or engaging to sail with convoy, the underwriter has been holden entitled to his premium, and permitted to retain it, or a proportion of it when the contract has been found divisible, if the insurance had commenced previous to the breach of warranty; as when made upon the vessel or goods at the port, as well as for the voyage from it (19).
In the case of Penson vs. Lee (20), upon a policy of insurance, the defence was a want of seaworthiness, and the underwriters succeeded in it. The insured, after some deliberation upon a point, of practice which alone gave occasion to the report of the case, obtained a verdict for a return of premium; but the facts, upon which the principal question was decided, are not reported; and it does not appear when the insurance was understood to have commenced ; whether at the port, or upon the departure of the vessel.
In the case of Forbes & Al. vs. Wilson, cited in the argument fcr the plaintiff, the insurance was at, as well as from the port of lading, upon a ship then (and therefore at the intended commence ment of the voyage) undergoing very material repairs, and not sea worthy. The vessel sailed in a navigable state-; and to a demand for a subsequent loss, the underwriter objected the defective state of the vessel before sailing, and at the intended commencement of the risk. Lord Kenyon was of opinion, that, under the words at and from the port of lading, it is sufficient if the ship be [ * 346 ] seaworthy at the * time of sailing; for, from the nature of the thing, the ship, while in port, must be undergoing *305 some repairs; and he decided for the insured; and this decision appears to have been acquiesced ini It may not be understood, from this case, to have been directly decided that an insurance commences upon a ship while not seaworthy, although in port. But in another case, that of Motteux & Al. vs. The London Insurance Company, the law was taken to be so, unless the point was entirely overlooked. There the insurance commenced upon' a ship from her arrival at Fort St. George, which came thither from Bengal in a decayed condition, and, after unlading her cargo, went back to Bengal for necessary repairs. Being put into a state of repair, the ship sailed again upon her homeward voyage, and was lost in the river of Bengal upon the Engilee sands. In the final decision of this cause for the plaintiff, upon the ground that the loss had happened in the course of the voyage insured, it must have been understood that the insurance commenced at Fort St. George, notwithstanding the state of decay in which the vessel arrived there, and continued, when she sailed from Bengal repaired and fitted for the homeward voyage.
The resemblance of that case to the present, in all the facts material in determining the validity of the insurance, is sufficient to make the decision an authority in point. But the law of that case, applicable to the present inquiry, was rather adopted without ques tian, than expressly decided. On-this account it is not, perhaps, to be relied on as a complete authority. That decision, however, as well as the decision by Lord Kenyon, in the case of Forbes & Al. vs. Wilson, are wholly irreconcilable with the supposition, which has been urged in the argument for the defendant, that the implied warranty of seaworthiness is in the nature of a condition precedent. This opinion has not been supported by any decision which has been cited, and is in some degree opposed by the construction given to express warranties in the cases referred to on that subject. This implied warranty is not governed by the rules applicable to the question of property in the assured. An interest in the risk is a pre-requisite * to the substantial existence and [ * 347 ] validity of a contract of insurance (21) ; and this, by the general policy of the law; for it is never treated of as an implied warranty or engagement of the insured. In practice, therefore, when a loss is demanded upon a policy of insurance, the insured is held to prove his interest. In the other case, the insurer must prove a want of seaworthiness in the vessel insured, if he would thereby avoid the contract.
If we have recourse to general reasoning, in this inquiry, for the *306 want of any direct and complete authority from decided cases, it may be observed, that stipulations on the part of the insured, which, not being expressed, are enforced as the implied intention? of the parties; for example, that there shall be no unnecessary deviation from the voyage described; that the vessel shall be suitably manned, shall be conducted with the advantage of customary pilotage, and shall be seaworthy, are reciprocal engagements, inferred from the nature of the contract, and arising with it. And although the remedy, adopted or provided by the common law, against a failure in either of these stipulations, is a forfeiture of the entire contract incurred on the part of the insured, yet this respects losses or damages subsequent, and not previous, to the failure of the assured in his implied reciprocal engagement. »
. Thus, in the case of deviation, even when it has been designed at the commencement of the voyage, the forfeiture of the insurance is not incurred until the departure actually takes place, and until that time the insurer is liable. A forfeiture by a want of seaworthiness may coincide with the commencement of the risk insured, as when the insurance commences from the sailing of the vessel, and she sails, and pursues her voyage in an innavigable state: there the contract may be construed to be avoided ab initia, the underwriter incurs no risk, and is therefore not entitled to retain his premium.
The seaworthiness of the vessel, her complete capacity to perform the voyage insured from the port of lading,, is not material to the portion of the risk incurred at the port, before sailing. A loss or damage occasioned by the defect of the vessel, whether [ * 348 ] occurring in port or at sea, is not chargeable *to the insurer. A possible deficiency of the vessel while in port, a necessity of repairs, some delay for the purpose, are events unavoidably contemplated by the parties, in every contract of insurance. Lord Kenyon says, from the nature of the thing, every ship is, while in port, unavoidably undergoing repairs. The case of latent defects is not essentially different; for these may or may not be discovered before sailing.
If any case may be supposed of a vessel insurable, while in port, although in a defective state, it becomes necessary to ascertain the circumstance or event, which shall be construed a- breach of the implied warranty of seaworthiness. From the authorities cited, from the nature of the warranty itself, this can be no other than the sailing of the vessel in an innavigable state. Then the state of the vessel becomes material to the risk insured; and then the extraordi nary exposure, contrary to the intention of the parties, is a forfeiture of the insurance; and until this event, even in the case of a latent defect, the sailing in a defective state, and, therefore, the forfeiture *307 is future and contingent, and could not be objected to a loss previously occurring.
Respecting the insurance upon the ship Three Sisters, the conclusion is, that, notwithstanding her latent defects, the insurers, though not liable for any loss occasioned by those defects, were answerable for any other loss within the ternas of the policy, which might have occurred to the vessel while in port and before sailing.
Respecting the goods and freight, there is a circumstance which deserves some further consideration. Was the lading of the goods upon a vessel in a defective state, which occasioned a relanding of them, a sufficient lading to commence this part of the risk insured ? and if so, as was suggested in the course of the argument, at whose risk were the goods, when relanded, and while on shore ?
For injuries to a cargo taken on freight, not occasioned by the perils of the sea, but by the defective state of the vessel, or the neglect or misconduct of the owners or mariners, the master and ship-owner are responsible to the freighters; and against these injuries they cannot insure, unless in some instances by a special clause in the contract. The responsibility *of [ * 349 J the master or ship-owner commences at the receipt of the goods; and at the same time, the right to freight commences, which becomes then an insurable interest. Where the ship-owner is also owner of the goods, and the freight is the expected increase of price, to arise by the carriage of them to a foreign market, the rules respecting the insurance of the cargo and freight are the same. They are not insurable against perils occasioned by the innavigability of the vessel, or the neglect or misconduct of the owner or his agents; but the goods become cargo as soon as they are received /or the vessel, and with their freight, or the benefit of their carriage, become an interest insurable under those names, against the perils of the sea, or those external misfortunes, which are not to be prevented by human foresight. While in port, the cargo and freight, as well as the vessel, are exposed to perils of this kind ; for instance, to capture, detention, or fire, which are not aggravated by a latent defect of the vessel, and respecting which the ship-owner is entirely innocent. In the case of a freighter sustaining a loss of this kind, and a subsequent discovery of a latent defect in the vessel, it would hardly be pretended, even if the insurer were discharged, that the ship-owner could be made responsible; the loss not being occasioned by the defect, for which he is chargeable, and the sailing in an innavigable state, being, at the time of the supposed loss, altogether future and contingent (22).
*308 Upon this reasoning, I infer that the construction of the implied warranty is tne same on the question respecting the goods and freight, as it is respecting the vessel; that the circumstance, by which the breach is ascertained, to the effect of avoiding the policy is the sailing of the vessel in an innavigable state. Until then, there is an opportunity for the cure of latent defects, if they should be discovered; and their mere existence, while not prejudicial or material to the risk insured, is not a forfeiture of the contract.
Whether in this case there was a division of the risk insured, is a question which will require very little discussion. [ * 350 ] * In the case of Stevenson vs. Snow, and several subsequent cases, in which that decision has been adhered to with some hesitation, the division of the risk has been placed altogether upon the ground that the two voyages, or distinct risks, appeared satisfactorily in the contract of the parties, or constructively from a usage connected with it. In this case, there is nothing in the words of the contract to suggest a division of the risk; nor has any usage been stated to aid the construction ; and, indeed, both intention and usage are excluded by the circumstances of this case.
It may be of some utility to notice the other view of this case, suggested by the state of facts ; although the opinions and reasons already offered may be satisfactory in deciding the question upon which the defence in this action depends. The period and events subsequent to the return of the ship Three Sisters to the port of Calcutta, are within the descriptive terms of this policy, either as a revival or continuance of the risk previously commenced, or, if in construction of law there had been no previous commencement of the risk insured, then as constituting a risk, to which the policy in question was completely applicable. The last would have been precisely the state of the case, if the insurance had been from the port of Calcutta, and for a risk commencing with the voyage.
Against a construction to this effect, it has been contended for the defendant, that the insured, by his own representation of the state of the risk, was prevented from any application of the policy to the period of events, subsequent to the return of the vessel to the port of Calcutta. Considering the assured to be concluded by the assertions of his captain, the only facts positively represented by his letter are, the continuance of the ship at Calcutta, in July, 1797, and that she had then commenced her lading. The time of her sailing is stated conjecturally, and there was no under taking by the assured, that the event should be as the captain had conjectured it might be. And it deserves consideration, that an objection of this kind, if made by the insurers, would have been *309 Hable to this reply; that the risk in fact had been more favorable to them than it had appeared in the representation, which, by its tendency to enhance the * premium, had been [*351 ] injurious only to the insured. And upon the whole, there seems to have been nothing in the representation which varied the condition of the contract, or which would have operated to prevent the legal effect of it, according to the obvious construction of the policy.
A necessity of repairs must be within the contemplation of tl e parties, and every unavoidable delay and deviation occasioned thereby, is therefore constructively permitted in a contract of marine insurance. This was the point decided in the case of Motteux vs. The London Assurance Company, which was a case of a known defect, existing at the commencement of the risk insured, and where a resort to another port for necessary repairs was found to have been unavoidable. The case is cited by Mr. Parle in proof of this general position, that if a ship is decayed, and goes to thfe nearest place to refit, it is no deviation (23). He cites also the case of Guibert vs. Readshaw (24), where a want of sufficient ballast, in the opinion of the captain, induced him to depart from the course of the voyage insured, upon the solicitation of the crew. This was decided to be no deviation; and yet a want of sufficient ballast is a want of seaworthiness.
In the case of Scott & Al. vs. Thompson (25), the plaintiff claimed, under a limited policy, a loss occurring out of the course of the voyage insured, where the deviation had been caused by a force and accident not insured against, and the insurer was determined to be liable. In the present case, the delay, or, as it may be called, the departure, in the voyage and risk insured, supposing it to have commenced in July, 1797, was occasioned by an accident not insured against, and the defective state of the vessel at the commencement of the risk; but being unavoidable, and for the necessity of repairs, to enable the vessel to perform the voyage insured, it was not a deviation prejudicial to the insurance.
Upon the whole, it may be understood to be the opinion of the Court, in considering the validity of the insurance, for which the premium is demanded in this action, that the policy * in question attached upon the vessel, cargo and [ * 352 ] freight, while in port, and before the sailing of the ship Three Sisters, in August, 1797; and that the insurers continued liable after her return to port, and for the subsequent *310 homeward voyage, and of course that the defence in this action upon the merits of it is not in any part supported.
It is necessary to notice one other objection made, though not much insisted on, for the defendant, to the form of this action ; that the party plaintiff, claiming as broker only, is not entitled. And to this, it may be sufficient to observe, that the direction by the assured, the defendant’s intestate, to the plaintiff, to charge the premiums in his account, was in itself a contract and promise on the part of the assured, and established a right of action in the plaintiff. Marshall observes that, according to the usage of trade in London, it is generally understood that the insurance broker, alone, and not the underwriters, can recover the premiums from the insured; though the point had not been settled .by a judicial determination. But there can be no reason against the action in the name of the broker, where a note has been given to him, or he has become the creditor of the insured at his request (26).

Judgment for the plaintiff.

 Cowp. 668.—Park, 377.

 4 Black. Comm. 67.

 Roccus de assecurat. No. 56, 57, 82, 88.

 1 Emer. ch. 1, § 3.—2 Emer. ch. 16, § 1, 2.—Poth. N. 5

 1 Emer. ch. 12, § 2, 9, 35.—2 Val. 80, 81.— 1 Val 659

 Marshall, 368, 369, 370.

 Ibid. 363, 364.

 Marshall, 557, 564.

 Marshall, 568, Meyer vs. Gregson.—1 Bos. & Pul. 172, Rothwell vs. Cook

 2 Bos. & Pul. 330.

 1 Emer, ch. 11.

 Vide Abbot on Shipping, 146,148.—1 Emer. 373, 374, 375.—Molloy, lib 2 ch. 2, § 10.

 Park, 300.

 Ibid. 301.

 1 Bos. & Pul. N. Rep.181

 Parmenter vs. Cousins, 2 Camp. 235.—Annen vs. Woodman, 3 Taunt. 299.— Brown vs. Girard, 4 Yeates, 115.—Hibbert vs. Martin, Park. Ins. 344.—Weir vs. Aberdeen, 2 B. & A. 320.—Oliver vs. Longman, 2 B. & A. 322.—Forbes vs. Wilson, Park, 344.—Treadwell vs. The Union Insurance Company, 6 Cowen, 270.—Ed.]