# THE MERCHANTS' INSURANCE COMPANY *versus* CHARLES Q. CLAPP.

**In** the case of insurance on cargo and freight *at and from* a foreign port, the policy will att×ch, notwithstanding the vessel while in port, with the cargo on board, may need repairs to put her in a fit condition to undertake the voyage ; the implied warranty being that she shall be seaworthy, not at the time of having her cargo on board, but at the time of her sailing.

Thus, insurance was made, November 7, 1827, on cargo and freight of a vessel, at and from Vera Cruz to Campeachy and Laguna, either or both, and at and from thence to her port of discharge in the United States, and on December 18th, by an alteration in the policy, for an additional premium, permission was given her to return from Laguna to Campeachy and proceed thence to her port of discharge in the United States, instead of proceeding as before described. The vessel, while at Vera Cruz, with a cargo on board, was unseaworthy for a voyage ; she however sailed thence, in September, 1827, for the United States, but from necessity put into Campeachy, where the cargo was unladed, the vessel caulked, and the cargo reladed. She sailed to Laguna, where she arrived October 27th, and took in a quantity of logwood. She then began to leak again, but on November 13th got under weigh for the United States. She put into Campeachy again from necessity, and on the 29th proceeded for the United States. She again went to Campeachy from necessity, and the cargo was there wholly unladed, the vessel repaired and made seaworthy, and the cargo sold to defray the expense of these repairs. She then went to Laguna, and took in another cargo, with which she arrived in the United States. It was *held*, that the policy attached at Vera Cruz, and again at Campeachy after the vessel was there made seaworthy, and therefore that the insurers were entitled to recover both of the premiums. .

UPON a case stated, it appeared, that this was an action of assumpsit upon two premium notes given by the defendant to the plaintiffs for insurance. One of the notes was dated November 7, 1827, when the policy was underwritten. The policy insured, "lost or not lost, $5400 on the cargo and $2100 on the freight of the brig Herald, at and from Vera Cruz to Campeachy and Laguna, either or both, and at and from thence to her port of discharge in the United States." The other note was given on December 18, 1827, when the following indorsement was made on the policy : — "In consideration of the additional premium of half per cent, permission is given for said brig to return from Laguna to Campeachy and proceed thence to her port of discharge in the United States, instead of proceeding as described within."

The Herald leaked badly on her voyage from Marseilles to Vera Cruz, and while there. On the 16th of September, 1827, she sailed from Vera Cruz for Boston, but on the 18th

<div style="margin-left">Merchants'<br>
Ins. Co.<br>
*v.*<br>
Clapp.</div>

she leaked at the rate of 1100 strokes an hour, and on the 24th 2000 an hour; she therefore put into Campeachy, where she arrived on the 26th. The cargo was there unladed and the vessel caulked. On the 2d of October, while lying in the harbour, she leaked fifteen inches an hour, and on the 7th, sixteen inches an hour. The cargo was reladed, and the vessel sailed on the 25th of October for Laguna, where she arrived on the 27th, and took in a quantity of logwood. She then began to leak again, but on the 13th of November she got under weigh, bound for New York. She put into Campeachy again on the 21st, with the loss of one man and another ill, procured two others, and on the 29th again proceeded to sea bound to New York. She continued to leak, and at length the leak increased so much that for the safety of the vessel and the lives of those on board, it was necessary to put back to Campeachy, where she arrived on the 10th of December. The cargo was there wholly unladed, and the vessel being surveyed, it was found that her bottom planks were so entirely wormeaten as to render her wholly unseaworthy. They were accordingly taken off, and a new bottom put on, and the cargo was sold to defray the expenses of these repairs. After being thoroughly repaired and made seaworthy, she sailed for Laguna on the 16th of February 1828, arrived there on the 21st, and took in a cargo of mahogany, with which she arrived safely at New York, and received her freight therefor.

As the vessel was not seaworthy when she sailed from Vera Cruz, nor until she was thoroughly repaired at Campeachy, the defendant contended that the policy never attached, and that the consideration of the notes had failed.

If the Court should be of opinion that the plaintiffs were entitled to recover, the defendant was to be defaulted.

<div style="margin-left">*April 1st,*<br>
1830.</div>

*Cooke* for the plaintiffs. The policy attached at Vera Cruz as soon as the cargo was on board the vessel and before she sailed. *Patrick v. Ludlow*, 3 Johns. Cas. 10; 1 Marshall on Ins. (3d edit.) 249; *Seamans v. Loring*, 1 Mason, 140. In order to have the policy attach, it is not necessary that the vessel should be seaworthy at the time when the policy is effected. *Smith v. Surridge*, 4 Esp. R. 25; 1 Marsh.

<div style="margin-left">**58**</div>

on Ins. 195 ; *Annen* v. *Woodman*, 3 Taunt. 299 ; *Treadwell* v. *Union Ins. Co.* 6 Cowen, 270 ; *M'Lanahan* v. *Universal Ins. Co.* 1 Peters's Sup. C. R. 184 ; *Taylor* v. *Lowell*, 3 Mass. R. 341.

*Merchants' Ins. Co. v. Clapp.*

Upon the same authorities, the cargo and freight were at the risk of the plaintiffs after the vessel's arrival at Campeachy and Laguna. At least the policy attached after the vessel was repaired and made seaworthy at Campeachy, and the cargo, or any part of it, reladed. There had been no deviation before that time, and the insurance was " at and from " Campeachy. But if there had been a deviation, it was cured by the indorsement on the policy. *Crowninshield* v. *New York Ins. Co.* 3 Johns. Cas. 142. A policy void in the beginning for want of seaworthiness, will attach by the vessel's being afterwards made seaworthy. *Weir* v. *Aberdeen*, 2 Barn. & Ald. 320 ; *Taylor* v. *Lowell*, 3 Mass. R. 341.

*C. G. Loring* for the defendant. As to the first note, the defence is, 1. that by reason of the unseaworthiness of the vessel, the policy did not attach before she was repaired at Campeachy ; — and 2. that it did not attach on the cargo and freight at and from Laguna, the last time, because the vessel's going there was a deviation, and because the original cargo had been sold and the new one was not contemplated when the policy was made.

The decision in *Taylor* v. *Lowell*, 3 Mass. R. 331, is against us, but it is believed to be erroneous and is therefore respectfully submitted for revision.

The question is, *when the risk commences*, under a policy of this sort ; and this depends upon the construction of the words, " *on the cargo* of the brig Herald *at and from* Vera Cruz to Campeachy." Now it is clear, that the risk commences at the *lading* of the cargo, and not before. *Patrick* v. *Ludlow*, 3 Johns. Cas. 10 ; *Mellish* v. *Allnutt*, 2 M. & S. 110 ; *Robertson* v. *French*, 4 East, 130.

The question then is, what is a *lading*, within the terms of the policy. The answer is, it must be a lading *for the purpose of transportation*, and one *suitable for that purpose*. The contract of the insurer of cargo, is simply to run the hazards of its transportation, including those usually or necessarily in-

59

Merchants'
Ins. Co.
*v.*
Clapp.

curred, in the ordinary course of business, preparatory to its departure, namely, *those during the ordinary equipment of the vessel.* And the contract of the assured is to furnish a seaworthy vessel, capable of receiving and carrying the cargo to its port of destination. And these contracts are mutual, simultaneous, and dependent. *Tidmarsh* v. *Washington F. & M. Ins. Co.* 4 Mason, 439 ; *Graves* v. *Marine Ins. Co.* 2 Caines's R. 339 ; *Annen* v. *Woodman,* 3 Taunt. 299 ; *Putnam* v. *Wood,* 3 Mass. R. 481 ; 1 Park on Ins. (7th ed.) 345, note.

The vessel must be seaworthy for the purposes for which the cargo is laded ; that is, not merely to receive, but to transport it ; and if the goods were put on board merely for storage, the policy would not attach. If the Herald, after receiving the goods, had been found at Vera Cruz incapable of repairs, and the cargo had been relanded, and the vessel broken up, could it be said that the risk ever commenced ? Or if the vessel had been repaired at Vera Cruz, after relanding the cargo there for that purpose, and the cargo had been sold, as it must have been, to defray the expense of the repairs, would the risk have commenced ? Clearly not ; for in such case the cargo would not have been laded so that it could have been transported. It follows, if these views are correct, that if the vessel is unnavigable from defects rendering her unfit to carry her cargo, with the ordinary additional equipments and repairs which are put upon vessels preparing for sea, so that the cargo must be relanded before she can be put in a suitable condition to proceed, she is unseaworthy and the risk on the cargo does not commence.

It is no answer to say, that no vessel is fit for sea when the cargo is first put on board, as the sails, provisions and ordinary repairs are usually obtained and made afterwards. For in the first place, the vessel, being in other respects seaworthy, is in the condition contemplated by the parties when making the contract ; in the second, these deficiencies do not interfere with nor impede the purpose for which the cargo is laded, nor *expose it to any new delay or new peril* ; and in the third, this is usual, and usage governs in such cases. *Pelly* v. *Royal Exch Ass. Co.* 1 Burr. 348.

The rule may be thus simply stated. A vessel is not seaworthy, if she is in such a state as renders it improper to put a cargo on board; or as would, if known, prevent its being put on board. And that is clearly the case, when the cargo, after being laded, must be taken out again; as must have been done here. Nor would there be any difficulty in applying the rule. In most cases, no doubt would exist; and in others, a jury must decide, as in all other questions of fact.

That the doctrine in *Taylor* v. *Lowell* is erroneous, will appear from the consequences which must follow from it. If the risk commences when the cargo is received on board of an unseaworthy vessel, it must, on principle, continue while the cargo is unladed in order to repair her; for if it was right to ship it, it surely was so to take it out, to make her fit to carry it. And if the policy once attaches, it must continue unless terminated by the fault of the insured; and in *Taylor* v. *Lowell,* this consequence seems to be adopted, and that the cargo was protected while on shore. Indeed no other construction could be adopted; for if the policy ceases to protect the property when relanded, it must be because during that time the implied warranty of the assured was not complied with; but the breach of that, if there is any, is the incapacity of the vessel to receive or carry her cargo; but such incapacity existed at the moment when it was put on board; and if therefore it avoids the contract at all, it does so *ab initio.*

Again, by this doctrine the insurers are made liable, in consequence of the legal fault of the assured himself, in not providing a vessel fit to receive and carry the cargo, for losses by land, which they never contemplated; for losses by fire, robbery, capture, embargo, and the like, which otherwise might not have occurred, and which could not be said to have occurred in the ordinary course of transportation.

Again, under this doctrine the insurers on cargo would be liable for losses incurred by reason of the extraordinary perils to which it might be exposed on account of the vessel's being placed in hazardous and exposed situations for the mere purpose of making her seaworthy; as for example, being laid upon a beach, or put upon a railway. But these are not the ordinary perils of transportation; they result entirely from the

Merchants'
Ins. Co.
    v.
Clapp.

unnavigability of the vessel, and her inability to do what the assured warranted her capable of doing.

It seems much more reasonable and equitable to consider that the risk had not commenced until the vessel was repaired, and that until then the goods had not been laded so as to become cargo, within the terms of the policy.

A confirmation of our views is found in the legal relations which subsist between the owner of the goods and the owner of the vessel. As between them, when a lading of the cargo takes place, an inchoate right to the freight immediately accrues, and the ship-owner has a lien on the goods for the freight ; but if his vessel is found unseaworthy for the voyage, could he retain such possession ? Clearly not ; he has broken his contract, and the owner of the goods is not obliged to hazard them in an unseaworthy vessel, nor to wait until she can be made seaworthy. And if such would not be a legal lading as between the freighter and ship-owner, why should it be so as between the freighter and the insurer ? To establish a different rule in the two cases, is to expose the insurer to the mercy of the freighter, who might, at his option, exercise his power of resuming possession of the property and rescuing it from new and extraordinary perils, or leave it so exposed, but at the risk of the insurer.

Further, it is manifest that the policy never attached upon any freight ; for as no cargo was so laded as would have entitled the owner to freight, and the inability to earn it was not occasioned by a peril insured against, there was no insurable interest. Phillips on Ins. 51 ; *Tonge* v. *Watts*, 2 Str. 1251 ; *Forbes* v. *Aspinall*, 13 East, 323 ; *Forbes* v. *Cowie*, 1 Campb. 520 ; *Thompson* v. *Taylor*, 6 T. R. 478 ; *Riley* v. *Hartford Ins. Co.* 2 Connect. R. 373 ; *Hughes on Ins.* 177, 179 ; *Martin* v. *Salem M. Ins. Co.* 2 Mass. R. 429.

The second premium note was plainly without consideration, for the policy under the indorsement could not attach until the vessel's departure from Laguna ; the case finds that she was then unseaworthy, and was never made sound again until after a deviation from the voyage insured.

March 28th,
1831.

WILDE J. delivered the opinion of the Court. This action is defended on the ground that the policy never attached, so

62

that the e being no risk, there was no consideration for the premium notes ; and this principle of the law of assurance is not disputed. The question therefore is, whether under the circumstances reported, the policy ever took effect so as to charge the underwriters in case of loss. If it did, it is clear that the whole of the premium should be recovered.

It is stated that the vessel sailed from Vera Cruz for Boston on the 16th of September, 1827. This was a different voyage from the one insured, which was from Vera Cruz to Campeachy and Laguna, and thence to the United States. This fact has not been insisted on as a deviation, or as a commencement of another voyage ; and therefore we suppose the defence is not intended to be rested on either of these grounds. If any such objection had been made, it would probably have been obviated by subsequent events in connexion with the alteration and enlargement of the policy, which might operate substantially as a new insurance, and also for other reasons, which will be hereafter noticed. The vessel leaking, she put into Campeachy, where she arrived the 26th of September, and there she was unladed and caulked and her cargo reladed, and she sailed from thence to Laguna, where she arrived the 27th of October and took in a quantity of logwood, and sailed from thence on the 18th of November for New York. She again leaked and put into Campeachy, arriving there the 21st of November, and on the 29th again sailed for New York ; but finally was obliged to put back a third time for Campeachy, for the safety of the vessel and the lives of those on board. Here the vessel was again unladed, and on a survey, her bottom being found perforated with worms so as to make her entirely unseaworthy, she was planked anew in her bottom, and the cargo was sold to defray the expenses of repairs. After being thoroughly repaired, she sailed again for Laguna, where she arrived the 21st of February, and then took in another cargo of mahogany, with which she sailed for New York, and arrived there in safety.

The question is, whether at any time during these disastrous voyages the property insured was at the risk of the underwriters on this policy.

It certainly may be doubted whether the vessel was sea-

worthy at any time before her last repairs at Campeachy , for she leaked so badly on all the previous voyages, without any accident or stress of weather, that the leakage can be ascribed to nothing but an unsound state of the vessel when she sailed from the several ports.   But she was seaworthy when she last sailed from Campeachy, and continued so when she arrived at Laguna and sailed from thence the last time for New York ; so that she sailed at the risk of the underwriters, if by the legal effect of the policy the contract covered any part of this last portion of the voyage.

By the original policy, the vessel was insured at and from Vera Cruz to Campeachy and Laguna, both or either ; she had therefore a right to go from Campeachy to Laguna.   By the indorsement on the policy, she had a right to go back from Laguna to Campeachy ; and from thence she was to proceed for her port of discharge in the United States ; and she sailed from Campeachy accordingly, bound for New York.   But the vessel continuing to leak, she was obliged to return to Campeachy for the safety of the vessel, and the lives of the crew.   And this clearly was no deviation ; so that she was rightfully at Campeachy the last time.   There she was thoroughly repaired ; and it was agreed she was seaworthy when she last sailed from that port.   And if she had taken in any cargo after these repairs, it is very clear that the policy would have then attached.   But it appears, that before these repairs, the cargo was taken out and sold, and it does not appear that a new cargo was purchased until the vessel arrived at Laguna ; and as the going to Laguna was a deviation, the policy could not attach there.

Then admitting the vessel to have been unnavigable during the portion of the voyage previous to her final repairs, the plaintiffs would not be entitled to recover, unless the policy had before attached at some one of the ports in the course of the voyage.   It is however admitted, that according to the case of *Taylor* v. *Lowell*, 3 Mass. R. 331, the policy did attach at Vera Cruz under the original policy.   And it attached again at Campeachy under the indorsement enlarging the policy.   So that the plaintiffs have a right to recover on both notes, if the case of *Taylor* v. *Lowell* can be supported.

The defendant's counsel, however, by a very able argument, has attempted to impugn the authority of that case, and to show that it cannot be maintained upon the well established principles of commercial law. But it must be remembered, that the circumstances under which that case was decided were such as to give to the judgment of the Court the greatest weight of judicial authority. It was a case of great importance. It was carefully and fully investigated. The defendant himself, against whom judgment was rendered, and his counsel, were lawyers of the highest eminence. The case was twice argued ; and it was decided by judges pre-eminent for their wisdom and learning, and distinguished by their familiar knowledge of commercial law. Mr. Justice *Sewall*, who delivered the opinion of the Court, carefully examines the authorities and fully considers the principles of the law of insurance as applicable to the point in question. And the unanimous decision of the Court after such an investigation, must be admitted to be of the highest authority.

But if it were otherwise, and the reasons given for the decision were as unsatisfactory as they appear to be to the defendant's counsel, still the decision would be binding on the present parties. It is now twenty-four years since the case of *Taylor* v. *Lowell* was decided, and the correctness of the decision has never before been called in question. All contracts of assurance during that time, must be presumed to have been made in reference to the law as settled in that case, and the premiums to have been regulated accordingly. A stronger ground of presumption as to the intention of contracting parties, cannot be imagined. If underwriters had been unwilling to assume risks, according to the law as laid down in that case, no doubt the form of policy would have been altered, so as to express the intention of the parties clearly, and to exclude the risk. We must presume, therefore, as this was not done, that all parties acquiesced in the law.

But the reasons given for the judgment in the case of *Taylor* v. *Lowell*, seem to us entirely satisfactory. " The seaworthiness of the vessel," as Mr. Justice *Sewall* remarks, " her complete capacity to perform the voyage insured from the port of lading, is not material to the portion of the risk

6 *

Merchants'
Ins. Co.
v.
Clapp.

incurred at the port before sailing. A loss or damage occasioned by the defect of the vessel, whether occurring in port or at sea, is not chargeable to the insurer. A possible deficiency of the vessel while in port, a necessity of repairs, some delay for the purpose, are events unavoidably contemplated by the parties in every contract of insurance." And, as Lord *Kenyon* says, in the case of *Forbes et al.* v. *Wilson,* Park on Ins. (7th ed.) 344, " from the nature of the thing, the ship, while *at* the place, probably must be undergoing repairs."

It has been argued, that in the contract of insurance there is an implied warranty that the vessel shall be seaworthy at the time of her receiving her cargo. This argument was fully considered and satisfactorily answered in the case of *Taylor* v. *Lowell.* The implied warranty is the same in an insurance on goods and freight, as it is in an insurance upon the vessel. It is, that the vessel shall be in a navigable state at the time she sails.[1] This is a reasonable construction of the implied warranty, but it would be most unreasonable to extend it back to the time when the vessel is in port. Many repairs may be made during the lading of the cargo ; and to require the vessel to be completely repaired, before she could take on board any part of her cargo, would occasion much unnecessary delay and expense, and could be of no possible benefit, that I can conceive, to the underwriter. On every point, therefore, we think the case of *Taylor* v. *Lowell* was decided on sound principles, and it is decisive in the present case.[2]

*Defendant defaulted.*

---

[1] See *Guarrigues* v. *Coxe,* 1 Binn. 592.

[2] See *Paddock* v. *Franklin Ins. Co. post,* 232 ; 1 Phill. on Ins. (2d ed.) 322, *Deblois* v. *Ocean Ins. Co.* 16 Pick. 308.