GEORGE WORTHINGTON *vs.* CHARLES C. BEARSE & others.

If a mortgagor of a vessel sells his remaining interest therein, with a stipulation that he will pay off the mortgage, and fails to comply with this stipulation, and the bargain is accordingly given up and the title reconveyed to him, a policy of insurance issued to him before his agreement of sale will be valid to cover a loss of the vessel after the reconveyance of the title to him.

CONTRACT upon a policy of insurance for $2000, payable to the plaintiff in case of loss, issued by the defendants to David P. Nickerson, upon seven eighths of the schooner William B. Castle, for one year from April 8th 1860.

It was agreed, in the superior court, that Nickerson had mortgaged his interest in the schooner to the plaintiff; and afterwards, on the 11th of October 1860, Nickerson conveyed thirteen sixteenths of the schooner to George T. Lovell, receiving notes of Lovell, Atwood & Co. in payment, and Nickerson was to pay to the plaintiff what was then due to him, namely, about $4000. About the 20th of the same month, Lovell reconveyed said interest to Nickerson and took back the notes which had been given in payment therefor, none of them having become due. This interest was reconveyed to Nickerson, because he could not carry out his contract to obtain a release from the plaintiff, as the latter would not accept said notes in payment thereof; and on the part of Lovell, because a person who was to be her master was dissatisfied with her; so that the parties acted from different motives, and each party was ignorant of the motives of the other. Upon both of these transfers, the papers were changed in the custom-house. The schooner was totally lost on or about the 16th of March 1861. Nickerson then owned seven eighths of her, subject to the mortgage to Worthington.

On these facts, judgment was rendered for the plaintiff for the amount of the policy and interest; and the defendants appealed to this court.

*G. Marston,* for the defendants. A sale of property insured discharges the insurer. *Carroll* v. *Boston Marine Ins. Co.* 8 Mass. 515. A partial sale is a discharge *pro tanto. Howard* v. *Albany Ins. Co.* 3 Denio, 301. Why is it not a discharge *in toto ?* Can the insured divide or modify the contract by a sale of a portion of the property insured? The contract is personal, and is based upon the facts existing at the time. It has regard not only to the property, but to the person owning and controlling it. Here, the controlling portion of the vessel was transferred. The effect on a contract of insurance is in principle the same as a fraudulent overstatement of interest. If the contract was discharged, in whole or in part, it could not be revived at the election of one party only. *Alliance Ins. Co.* v. *Louisana Ins. Co.* 8 Louis. 11. *Cockerill* v. *Cincinnati Ins. Co.* 16 Ohio, 148. *Howard* v. *Albany Ins. Co.* 3 Denio, 301.

*T. M. Hayes & J. D. Howe,* for the plaintiff.

BIGELOW, C. J. We entertain no doubt that the defendants are liable for the full amount insured by the policy. This liability rests upon two grounds, either of which is sufficient to sustain the plaintiff's claim.

In the first place, on the facts stated, the alleged sale by the assured of thirteen sixteenths of the vessel covered by the policy was incomplete, and never took effect so as to extinguish his insurable interest therein. One of the essential stipulations of the agreement of sale was not complied with. The vendor expressly agreed to pay the amount due on the mortgage of his share of the vessel, and to procure a release from the mortgagee. This, the case finds, he did not and could not do. Until this part of the contract was complied with, the vendee had a right to avoid the sale and rescind the whole bargain. The delivery of the bill of sale passed a title only at the election of the vendee. He might, within a reasonable time after the failure of the assured to fulfil his contract of sale by procuring a release of the mortgage on the vessel, elect to restore the legal title and

recover back the consideration of the transfer. During this time the plaintiff had a continuing and subsisting interest in the vessel. The transfer could not be regarded as absolute and complete, but only conditional on a compliance with the terms of the bargain. A mere transfer of the legal title of a vessel does not extinguish a right to recover on a policy, if the party making the transfer still retains any right or interest in the vessel or her proceeds. *Gordon* v. *Mass. Ins. Co.* 2 Pick. 249. *Lazarus* v. *Commonwealth Ins. Co.* 19 Pick. 81. *Wilson* v. *Hill*, 3 Met. 66, 71. The insured clearly had an interest in the preservation of the vessel, until it was certain that the contract for her sale had become complete, and the title to her had vested absolutely in the vendee. In this view of the facts, the insured did not forego his right to recover on the policy pending the transactions in relation to the transfer of the vessel.

But if it were otherwise, and it had appeared that the sale of the vessel was complete and absolute, so that for a time the insured had parted with his insurable interest, his right to recover on the policy was not gone forever. It was only suspended during the time that the title to the vessel was vested in the vendee, and was revived again on the reconveyance to the insured during the term specified in the policy. The insurance was for one year. There was no stipulation or condition in the policy that the insured should not convey or assign his interest in the vessel during this period. The contract of insurance was absolute to insure the interest of a person named in a particular subject for a specific time; for this entire risk an adequate premium was paid, and the policy duly attached because the assured at the inception of the risk had an insurable interest in the policy. So, too, at the time of the loss, all the facts necessary to establish a valid claim under the policy existed. The execution of the policy, the interest of the assured in the vessel, the due inception of the risk, a compliance with all warranties, expressed and implied, and the loss by a peril insured against, are all either admitted or proved. Upon what legal ground, then, can it be maintained that the policy has become extinct? No fact is shown from which any inference can be made that by

the alienation of the title to the vessel during the time named in the policy, the risk of the insurers upon the subsequent re-transfer of the vessel to the assured was in any degree increased or affected, or that any loss, injury or prejudice to the under-writer was occasioned by the fact that the absolute title to the vessel was temporarily vested in a third person. On the con-trary, such temporary transfer of title would seem rather to have inured to the benefit of the insurers, because they have received a premium for a risk from which they were exempted during a portion of the time designated in the policy. In the absence of any express stipulation, as in the policy declared on, no return premium could be claimed by the assured by reason of any temporary suspension of the risk or withdrawal of the subject insured. The policy had attached and the risk was entire. During the time that the vessel was owned by a person other than the assured, no loss could happen which would be covered by the policy. The insured, having no interest, could sustain no loss. If a total loss occurred during the period, the insurable interest would become extinct. Upon a retransfer of title to the insured, the policy would revive only to cover the renewed in-terest thereby acquired, and not to render the insurers liable for losses which may have happened during the intermediate period. The sole effect would be to suspend the risk for the time during which, by reason of the transfer, the assured had no interest in the subject insured, and to revive it as soon as the original inter-est was revested in him. The transfer of the vessel rendered the policy inoperative, and not void. It could have no effect while the insured had no interest in the subject insured. But when this interest was revived or restored during the term desig-nated in the policy, without any increase or change of risk or other prejudice to the underwriter, there seems to be no valid reason for holding that the policy has become extinct. Inas-much as neither the subject nor the person insured is changed, and the risk remains the same, the intermediate transfer is an immaterial fact, which can in no way affect the claim under the policy.

This doctrine is not only consistent with sound reason, but

it is in accordance with the analogies of the law of marine in-surance. Risks may be temporarily suspended and subsequently revived, without invalidating the right of the assured to claim under the policy. Unseaworthiness after the policy has attached, if imputable to the neglect or other fault of the assured, will suspend but not destroy the risk. Restoration of the navigability of the vessel will revive the right of the assured to claim under his policy. *Taylor* v. *Lowell*, 3 Mass. 331. 1 Phil. Ins. § 734. So goods insured for a voyage, which by the terms of the policy are covered only when water-borne, may be withdrawn from the risk while temporarily placed on land, but the policy upon them will revive when, without increase of risk, they are again put on board the vessel. In these and like cases the principle adopted is, that the contract of insurance is not violated, or the right of the assured to claim an indemnity affected, by the existence of a state of facts which does not contravene any stipulation in the policy or in any way change or affect the risk, or otherwise work any injury or prejudice to the rights of the insurer. *Carroll* v. *Boston Marine Ins. Co.* 8 Mass. 515. *Power* v. *Ocean Ins. Co.* 19 Louis. 28. *Howard* v. *Albany Ins. Co.* 3 Denio, 301, 303. 1 Phil. Ins. § 89.          *Judgment for the plaintiff.*