# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF SUFFOLK, NOVEMBER TERM 1853, AT BOSTON.

**PRESENT:**

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY, ⎫
Hon. THERON METCALF, ⎬ Justices.
Hon. GEORGE T. BIGELOW, ⎭

---

### Frederick W. Capen *vs.* Washington Insurance Company.

This court will not give an opinion upon a statement of facts which presents merely a speculative question, the decision of which either way will not terminate the controversy between the parties; but the agreed statement will be discharged.

In a time policy on a vessel then at sea, there is no absolute implied warranty that the vessel is, and shall continue seaworthy during the entire risk, although there may be an obligation on the part of the assured to keep the vessel tight, staunch, and strong, a failure of which, when practicable, would prevent a recovery for a loss arising from such cause.

THIS was an action on a policy of insurance on the ship Riga. It came before the court at the March term, 1851

upon an agreed statement of facts, as reported by the chief justice, as follows : " The policy was dated April 10, 1848, and insured the vessel at and from the port or place where she was on the 30th of March, 1848, at noon, to and at all ports and places to which she might proceed for one year from that time, with a provision that if she should be at sea at the end of the year, the risk should continue at a *pro rata* premium until her arrival at her port of discharge. At the time of subscribing the policy, the ship was at sea. She afterwards arrived in Boston, with an assorted cargo, which she delivered in good order in September following ; and after some slight repairs, sailed for Norfolk in October. She there took in a cargo of staves, which is a heavy one, and tends to strain a vessel, and sailed for Sicily ; but after being a short time at sea, she sprung a leak in heavy weather, but whether from causes which would have affected a seaworthy vessel is not agreed. In consequence of this condition, the master, at the solicitation of the crew, put back and went into Savannah. Surveys were then had upon the vessel, as the result of which, the surveyors reported that in their opinion, owing to the weak state of the vessel and the decayed condition of the timbers, they adjudged it necessary that she should undergo extensive and costly repairs, by the removal, among other things, of defective timbers, and the substitution of new ones ; although the surveyors adjudged her to be in a fit condition, with calking and trifling repairs, to proceed to a northern port in ballast, or with a light cargo of cotton, for permanent reparation. The costs of such repairs were estimated at $10,000, if made at Savannah, but they would be much more costly there than at New York or Boston. She was prepared accordingly, and sailed with a light cargo of cotton, and was soon after burnt at sea and totally lost.

" The insurers refused to pay the loss, on the ground, among others, that as the vessel required essential reparation, on account of decayed wood and iron, to make her seaworthy before the end of the year, she was not seaworthy at the inception of the risk for the time and voyages intended to be

covered by the policy. The position apparently intended to be relied on by the defendants is, that the implied warranty in a time policy is analogous to that of a voyage policy in this respect. It is not denied, they say, that in a voyage policy, the nature of the warranty of seaworthiness depends on the nature of the voyage insured, and that the vessel must be sufficiently tight, staunch, and strong, and otherwise well fitted for the voyage insured. Therefore, a vessel may be sufficiently strong and sound, in all her essential parts, to enter on a short voyage in a temperate region, which would be deemed quite unfit for an India voyage, which would ordinarily require a year, and expose the vessel to the winds, seas, and currents of various climates. So, it is insisted that in a time policy the vessel at the inception of the risk, must be sufficiently strong and sound in her essential parts, such as the wood and iron work, to bear the ordinary perils of navigation in any and all voyages, for the term of one year, and such further time as might elapse, if she was then at sea, or until her arrival at a port of discharge.

" It was, therefore, contended, that if at the commencement of this risk, the wood or iron, necessarily entering into the structure of the vessel, were so far decayed or had a tendency to decay, that they would have to be replaced, within the term, with new wood and iron, then the ship was not seaworthy for the term, and so that the policy never attached.

" In order to present this question, and for the purposes of this hearing, the plaintiff admits that although the vessel was seaworthy for the voyage in which she was engaged at the time mentioned in the policy, as the time for the inception of the risk, yet that such was the state of some of her timbers and iron fastenings, that it was certain that new ones, constituting essential parts of the frame, would become necessary in the course of the year, to make her seaworthy for the usual cargoes carried by such vessels. But he reserves the right to go to the jury on the facts on that point, if the court should adjudge the law in favor of the defendants.

" The defendants also admit, for the purpose of this argument, that the vessel was seaworthy for the voyage in which

she was engaged at the time fixed in the policy for the com·
mencement of the risk incurred, but reserve the right to go to
the jury upon that question of fact, if the court upon this
question of law shall be in favor of the plaintiff."

*C. G. Loring*, for the plaintiff.

*B. R. Curtis*, for the defendants.

SHAW, C. J.   The question here presented, we think, is too
purely speculative and abstract, to be the subject of adjudi-
cation.   The proper province of a court of justice is, rather
to render judgments deciding upon the rights of parties in a
given case, than to express opinions upon abstract questions
of law; although in adjudicating upon the rights of parties,
it becomes necessary to express opinions upon various points
and rules of law, directly or indirectly involved.   But such
judgment, being the application of rules of law to particular
cases, must be rendered upon facts, brought to the notice of
the court, by some of the well-known modes, as by the dis-
tinct averments of one party admitted by the demurrer of the
other; by the verdict of a jury general or special; by an
agreed statement of facts; a bill of exceptions; the report of
a judge or otherwise; and such facts, undisputed or proved,
must be comprehensive enough to embrace all the particulars,
upon which the contested right depends.   Sometimes, indeed,
a case may be so complicated, and the circumstances so
numerous, that it is exceedingly difficult to bring it within
any general principle, and a court can then do little more than
pass judgment upon the special circumstances of the particu-
lar case.

The questions apparently intended to be presented in this
case, seem to be, whether in an insurance on a vessel for a
term of time, there is any implied warranty of seaworthiness,
as in case of a policy on a vessel for a voyage, so that if
not then seaworthy, the policy does not attach; whether it
makes any difference in this respect, that at the time fixed in
the policy for the inception of the risk, the vessel is in port,
or at sea, near home, or in a distant part of the world; whether,
if there be such an implied warranty of seaworthiness, it must
be that degree of fitness necessary for the safety of the vessel

at the time, wherever she may then happen to be, and for the position in which she then is, or whether, as in voyage policies, she must be to that degree tight, staunch, and strong, and adequate, in case she shall not be disabled by the perils insured against, to keep the sea, and carry such cargoes as such vessels are usually employed to carry, during the whole term for which she is insured, without essential repairs.

Perhaps another question was intended to be raised, whether if the policy did attach and the insurance took effect for the year, and if within the term the ship sailed from Norfolk for Sicily, or from Savannah for Boston, in a condition not seaworthy, and was lost by one of the perils insured against, to wit, by fire, which, in no case, could be attributed to the weak state of the vessel, the insurers are liable for the loss.

The question upon which the court are asked to give an opinion, is purely an abstract one, the decision of which, either way, would not terminate the controversy. Either party would have a right to contest the facts here provisionally agreed upon; and supposing we should express an opinion that there was, or was not an implied warranty in a time policy, that the vessel is seaworthy, still the nature and character of that seaworthiness would be open, and might be wholly changed by new evidence. Whether seaworthy or not, must depend on many circumstances, not now appearing. Was the condition, in which it is now suggested that the ship was in at the inception of the risk, caused by natural decay? or by perils of the sea previously incurred? if so, when and where, how long previously? Was she at home or abroad? was she at a place where repairs could be made, or so far distant from port that it was hazardous to search for them? Such are some of the questions of fact it is necessary to answer, before the point of seaworthiness can be properly passed upon. The term "seaworthy" is somewhat equivocal. In its more literal sense, it signifies capable of navigating the sea; but more exactly it implies a condition to be and remain in safety, in the condition she is in, whether at sea, in port, or on a railway stripped and under repairs. If when the policy attaches, she is in a suitable place, and capable, when repaired

44*

and equipped, of navigating the sea, she is seaworthy.   But where a vessel is seaworthy for a specified voyage, the place and usual length being given, something more is implied than mere physical strength and capacity; she must be suitably officered and manned, supplied with provisions and water, and furnished with charts and instruments, and especially in time of war, with documents necessary to her security against hostile capture.   These cannot apply, in case of a time policy, whilst the ship is engaged in no voyage.   The possibility that such a variety of facts and circumstances may be brought to bear on the final decision of the rights of the parties litigant, renders it, in our judgment, useless and improper, to express an opinion upon a partial view of the facts.   The court have sometimes said that where an opinion on a proposed question of law, though in form abstract, would be decisive of the cause, if given one way, they would hear the case in that form.   It often saves the necessity of a long and expensive jury trial.   But as this case stands, an opinion either way would not determine the controversy.   Such an opinion, upon a partial view of the case, might hereafter rather embarrass than aid the court, in any further consideration of it.   The statement of facts, therefore, must be discharged, and the cause stand for trial.

At the November term, 1851, the case again came on for trial by jury, before *Shaw*, C. J.   After considerable evidence had been introduced, the cause was, by consent, withdrawn from the jury, to be submitted to the whole court on questions of law, upon a report of the presiding judge, substantially as follows :

" An abstract of the policy, expressing the nature and terms of the contract in this case, is set forth sufficiently in the former report.   On the trial before the jury at this time, there was evidence tending to show that at the time the policy was subscribed, April 10, 1848, the ship was at sea; that afterwards, in the month of September, she arrived in Boston with an assorted cargo, which she delivered in good order; and there was no evidence tending to show that at the com-

mencement of the year for which she was insured, 30th of March, 1848, she was not either safe in port, or in the prosecution of a voyage, on which she had sailed in a seaworthy state, except such as might have resulted from the surveys subsequently mentioned, or that she was not a vessel capable of being made useful for navigation with suitable repairs, at suitable times during the term for which she was thus in sured.

There was also evidence tending to show, that after undergoing some small repairs at Boston, she sailed thence to Norfolk, in October, and there took in a cargo of staves, which is a heavy one, having a tendency to strain a vessel; that she sailed thence for Sicily, and after being a short time at sea, she sprung a leak, as the plaintiff maintained, in heavy weather, but this was denied by the defendants, who attributed the fact to the weakness and decay of the vessel. In consequence of this disaster, and at the solicitation of the crew, the master turned back and put into the port of Savannah, in Georgia. Two surveys were there made, the result of which was a report of the surveyors, stating that in their opinion, owing to the weak state of the vessel and the decayed condition of her timbers, it was necessary that she should undergo large and expensive repairs, by the removal of defective timbers, among other things, and the substitution of new ones; though she might be put into a fit condition, with some calking and slight repairs, to proceed to a northern port, in ballast or with a light cargo of cotton, for permanent repairs; the cost of such repairs at Savannah were estimated by the surveyors at $10,000, but at much less, made at New York or Boston. There was evidence tending to show that the vessel was slightly repaired at Savannah, and sailed from there with a light cargo for New York, and that on her passage, about the 3d or 4th of March, she took fire and was burned at sea and totally lost.

The grounds of defence were : 1. That at the time fixed in the policy for the commencement of the risk, 30th of March, 1848, regarding decay only, this vessel was so much weakened and impaired, as not to be able to bear the ordinary

perils of navigation without essential repairs, and replacing the timbers thus decayed or beginning to decay, for and during the time; and that if the plaintiff failed to perform this duty, or comply with this condition, the insurers were thenceforth discharged from the contract of insurance, and that it became void, so that if a total loss afterwards happened, though by a peril insured against, and not caused in whole or in part by such condition of unseaworthiness, but wholly from another cause, still the underwriters were not liable: That in point of fact, said vessel did sail from Norfolk on a voyage towards Sicily, in an unseaworthy condition, and from that time, that the defendants were discharged from further liability on their contract.

2. That the vessel sailed on a voyage from Savannah towards New York in a like unseaworthy condition, by means of which the contract became void, and the defendants discharged, before the loss by fire which occurred during that voyage.

On these points, in order to give a direction to the trial, the chief justice ruled that on a policy upon a vessel on time for a certain term, at all ports and places, there is no implied warranty on the part of the assured, that the vessel is seaworthy, in the ordinary sense of that term, as used and understood in the law and practice of insurance, either at the time when the policy is underwritten, or at the, time at which, by the terms of the policy, the risk is to commence; but that the only warranty in that respect, if any, is, that the vessel is in existence as a vessel, not lost, at the time fixed for the commencement of the risk, capable — if then in port — of being made useful, with proper repairs and equipments, for navigation, and that she is in a safe and suitable condition for such a vessel to be in, whether simply lying in port, or stripped and undergoing repairs, or on a suitable railway for that purpose; or, if at sea, that she is in existence, safe, *salvus,* (not lost,) at the time the policy attaches, and, perhaps, if she be then completing a voyage, that she was seaworthy at the commencement of such voyage. If the vessel is in such condition, and the implied warranty or condition to this extent is not broken, the

policy attaches and is not void, and the premium cannot be recovered back. But if the vessel was then lost, had ceased to exist as a vessel and become a wreck, or incapable on arrival in port of being made available for navigation, by reasonable repairs and fitting, then there was no subject for the policy to take effect upon; the contract would fail and be void, and the premium liable to be recovered back, as money paid upon a consideration which had failed. This was a question of fact for the jury. *Clifford* v. *Hunter,* 3 C. & P. 16.

This direction was such, in effect, as to negative the first proposition on which the defence was placed, to wit, that in every policy of insurance on a vessel on time, there is an implied warranty on the part of the assured that the vessel is then, whether at sea or in port, in such a state of strength and soundness and freedom from decay, that she must be considered reasonably capable, without replacing decayed timbers and materials, to bear the ordinary perils of navigation, during the term of time covered by the policy.

Some discussion took place upon the second and third grounds of defence, which were these: that if the vessel was seaworthy, within the foregoing ruling, at the inception of the risk, yet that the assured was under an implied warranty or obligation to keep the vessel seaworthy during the time for which she was insured; and if she was permitted to go to sea, at any time during the term, from a port where repairs, supplies, and equipments could be obtained, in an unseaworthy condition, the insurers were thereby discharged from further liability on the policy; and that in the present case, they were thus discharged by the fact that the vessel was permitted to set sail from Norfolk, where repairs might be obtained, on a voyage towards Sicily, in an unseaworthy condition; also, that she was suffered to depart from the port of Savannah, in a like condition; both of which events preceded the loss by fire on the homeward voyage.

Upon this subject, the presiding judge proposed to rule and instruct the jury that, if the policy attached and took effect, at the commencement of the year mentioned in it, although it was the duty of the assured, relying on the policy

for indemnity, to keep the vessel sound, staunch, and suitably fitted to bear the ordinary perils of navigation, yet the obligation to do so was not a warranty of seaworthiness in the ordinary sense of that term, so that a failure to perform it, at the commencement of each voyage or passage, would determine and put an end to the contract and discharge the underwriters from their liability for losses, from any or all other perils. But the obligation of the assured was to this effect, that if he should fail to keep the vessel tight, staunch, and strong, or should send her to sea in an unseaworthy condition, and the vessel should be afterwards lost from a cause attributable in whole or in part to such default on the part of the assured, the underwriter would not be responsible for such loss, because it would not appear to have necessarily resulted from any risk insured against. But, as the policy was not rendered void by such unseaworthiness, if the vessel be subsequently lost by a peril insured against, such loss not being attributable in whole or in part to such unseaworthiness, the assured would be entitled to recover. In applying these rules to the case on trial, it was proposed to direct the jury that the sailing of the vessel from Norfolk on a voyage to Sicily, and afterwards from Savannah to New York, although in an unseaworthy condition, was not a breach of warranty, which annulled and rendered the policy void from those times respectively, if the ultimate loss was not attributable to such unseaworthiness; and if the vessel, within the time, was lost by fire, being an independent peril insured against, the underwriters were liable.

These proposed instructions being stated, the counsel for the defendants, relying upon the grounds of defence before stated, and objecting to the proposed directions in matter of law, declined going to the jury to find upon the evidence, whether the vessel was unseaworthy at the inception of the risk, according to the proposed directions. Thereupon, by consent of the parties, for the purpose of submitting the case to the whole court upon the correctness of the above directions, the case was taken from the jury, with an agreement, that, if the instructions are correct, judgment on the verdict or a default

shall be entered for the plaintiff; otherwise, a new trial to be had, or such other disposition made of the case, as the whole court may order. The case was argued at the March term, 1852, and the opinion delivered at the November term, 1853.

*C. G. Loring*, for the plaintiff. 1. In a policy of insurance, upon time, for a term certain, and at all times and places, there is no implied warranty of seaworthiness, in the ordinary sense of the term, to wit, that the vessel is, at the commencement of the risk, or date of the policy, in such a state of strength and soundness, and freedom from decay, that she must be considered reasonably capable, without replacing decayed timbers, or other decayed materials, to bear the ordinary perils of the seas, in all voyages in which she may be engaged during the time covered by the policy. But the only implied warranty is, that the vessel, at the commencement of the risk, is in existence, as a vessel, and in safety, if in port; and seaworthy, or susceptible of being made so by reasonable reparation; or, if at sea, that she was seaworthy for the voyage, when she sailed upon it; and susceptible of reparation on her arrival, so as to be a suitable subject of insurance. *Hollingworth* v. *Brodrick*, 7 Ad. & Ell. 40; *Dixon* v. *Sadler*, 5 Mees. & Welsb. 405, 416; S. C. 8 Mees. & Welsb. 894; 1 Arn. on Ins. 667–670, § 248; *Ellery* v. *New England Ins. Co.* 8 Pick. 14; *Paddock* v. *Franklin Ins. Co.* 11 Pick. 227; *American Ins. Co.* v. *Ogden*, 20 Wend. 287; *Small* v. *Gibson*, 3 Eng. Law & Eq. 299, and 16 Ad. & Ell. (N. R.) 141.

2. If a policy for a term of time has once attached upon a vessel, she being safe in port, or at sea in a seaworthy condition, at the commencement of the risk, the policy is not avoided by her being subsequently permitted to go to sea in an unseaworthy condition, from a port where repairs could have been made, so as to discharge the insurers from liability for a loss incurred subsequently, during the term, in course of another voyage for which she was seaworthy. But the implied warranty of seaworthiness, after the policy has thus once attached, is such only as exonerates the insurers from any loss attributable to unseaworthiness; but does not exonerate them from liability for a loss by perils insured against, wholly

attributable to another cause. 1 Arn. on Ins. 654–673; 1 Phil. on Ins. 325–328; *Paddock* v. *Franklin Ins. Co.* 11 Pick. 227; *Taylor* v. *Lowell,* 3 Mass. 331; *Deblois* v. *Ocean Ins. Co.* 16 Pick. 303; *American Ins. Co.* v. *Ogden,* 20 Wend. 287; *Chase* v. *Eagle Ins. Co.* 5 Pick. 51; *Annen* v. *Woodman,* 3 Taunt. 299.

3. In a policy on time, no port or place being mentioned for the inception of the risk, there is no implied warranty of seaworthiness, a non-compliance with which prevents the policy from attaching or taking effect. But the insurers are liable for any loss by a peril insured against, not attributable to unseaworthiness happening during the term, if the vessel be in such place and condition as a prudent man, exercising suitable discretion and uninsured, might permit her to be. *Small* v. *Gibson,* 3 Eng. Law & Eq. 299, and 16 Ad. & Ell. (N. R.) 128.

4. The vessel being seaworthy for a passage from Savannah to New York, with a cargo of cotton, although unfit for a voyage to Europe, with a heavy cargo, was protected by the policy, being on her way there for repairs; and having been destroyed by fire, the insurers are liable. A policy on time covers the vessel in all places and conditions, in which a prudent owner uninsured might reasonably place her, or permit her to be. 1 Arn. on Ins. 670, 671; *Ellery* v. *New England Ins. Co.* 8 Pick. 14; *Hall* v. *Franklin Ins. Co.* 9 Pick. 466; *Taylor* v. *Lowell,* 3 Mass. 331; *Merchants' Ins. Co.* v. *Clapp,* 11 Pick. 56; 1 Phil. on Ins. 323.

*S. Bartlett,* for the defendants. I. In a time policy, intended by the parties to attach first to a vessel at sea, is it a condition of the contract, that at the time the policy attaches, the vessel shall be, and is a seaworthy vessel?

1. So far as relates to direct authority, the English courts do not concur. The queen's bench holds, that the condition forms part of the contract. *Small* v. *Gibson,* 3 Eng. Law & Eq. R. 290, and 16 Ad. & Ell. (N. R.) 128. The exchequer chamber holds, that there is no such condition in the contract. *Small* v. *Gibson,* 3 Eng. Law & Eq. 299, and 16 Ad. & Ell. (N. R.) 141. The indirect authorities are all in favor of the

existence of the condition, viz : In *Hollingworth* v. *Brodrick*,
7 Ad. & Ell. 40, Patteson, J., said : " It is clear, that the im-
plied warranty of seaworthiness is satisfied if the ship is sea-
worthy at the commencement of the risk.   I do not know
of any distinction on account of the risk being for time."   In
*Dixon* v. *Sadler*, 8 Mees. & Welsb. 897, Tindal, C. J., said :
" No stress was laid, in course of the argument, upon any dis-
tinction to be taken between the implied warranty on the
part of the assured, as to the seaworthiness of the ship in the
case of a policy on a particular voyage, and on a time policy ;
nor do we think any such distinction can be held to exist."
In *Paddock* v. *Franklin Ins. Co.* 11 Pick. 227, 232, " The gen-
eral rule that the ship must be seaworthy at the inception of
the risk, in order to make the policy attach, and charge the
underwriter with the risk, probably would be applied in this as
in all other cases, being a necessary incident to the contract."
Arnould says : " Though there is no warranty that the sea-
worthiness shall actually continue throughout the whole time,
yet the ship, at the commencement of the risk, should be in
such a state of seaworthiness as to make it likely it should so
continue."   1 Arn. on Ins. 668.

2. The analogies are those derived from voyage policies,
and the grounds on which the condition is uniformly held to
exist in those policies, are alike applicable to time policies.
The judgment in *Small* v. *Gibson*, in the exchequer chamber,
is founded solely on the ground, that it is unreasonable to infer
that the parties to the contract (or rather, that one of those
parties) consented to a condition, which involved a state of
facts at the time the risk was to attach, about which he might
be wholly ignorant, and for which he could not provide.   But
it would seem to be an answer to this ground, that the same
thing is, or may be true, of voyage policies, and yet in the
cases where it has been held to be true, and where, from the
latent character of the defect, it could not have been known to
the assured, the court have uniformly ruled, that the warranty
or condition was wholly independent of that consideration, and
that the undertaking, on the part of the owner, was absolute,
and the same warranty applies to the owner of the cargo,

though he is not the ship-owner. 1 Phil. on Ins. § 725; 1 Arn. on Ins. 653, 655; *Lee* v. *Beach,* 1 Park on Ins. 468; *Douglas* v. *Scougal,* 4 Dow, 269. It is no answer to say, that the owner must be taken to know. In voyage policies this is merely forcing upon him a legal presumption, in some cases, against fact and possibilities; and so it tends to show that the condition is one so essential to the contract and the underwriters, that the law will not allow the impossibility of knowledge of the facts to be a subject of proof in such contract.

3. But it is submitted, that the character and purpose of the contract shows, that the contracting parties understood and assented that the same condition which exists in voyage policies formed part of their contract. It is clear, that wherever a time policy is made, intended to attach to a vessel at sea, the state of facts, as to her condition, are unknown to both parties. If either party has superior knowledge, it is the owner, who is familiar with her past history and condition. She may be in the position described by the chief justice in his rulings in this case, not a wreck incapable of future repair, but reduced to a condition in which, though reparable if in port, yet at sea wholly incapable of resisting the ordinary perils. In this possible state of things, known to each party, one of them is to take that risk, and the question is, will the law imply from the contract in this case, or from the circumstances, that the ordinary condition of voyage policies is waived by the underwriter, and that he agrees by the contract to bear, not merely losses during the time for which he expressly contracts, but all antecedent losses that may have occurred on the voyage? or will it imply, that up to the time of the contract, the owner is his own insurer?

4. There are a few practical considerations that in the defendants' view, go to show that the rule that prevails in common voyage policies, is, in the absence of special provisions, intended by parties to form part of their contract. In an open time policy, in the case supposed, which turns out to have attached to a vessel injured by past perils, and yet not irreparable if in port, at what period and place is the value of the

vessel to be fixed, for the purposes of indemnity in case of subsequent loss, whether when last spoken in a safe condition, or when last in port, foreign or domestic, or at the date when the policy attached; and if the latter, how is it to be ascertained, where she is in such an injured condition as the case supposes? Upon what assumed basis is the premium to be fixed, if the condition that the vessel is seaworthy is struck out of the contract, and she is or may be at sea when the risk attaches, and her condition, or even the date when she was last in port, is wholly unknown? If in such time policies, the warranty of seaworthiness, when the risk attaches, forms no part of the contract, and if, as was ruled by the chief justice, there is no subsequent warranty of seaworthiness, the non-compliance with which will *per se* defeat the contract, then there is no warranty of seaworthiness in the contract at any time, and underwriters must be construed to have waived that great protection, so important to them and to public policy. 1 Arn. on Ins. 652, 653; *Douglas* v. *Scougal,* 4 Dow, 276. But it is said, that though the court refuse to deem the ordinary warranty a part of the contract, yet they may engraft on it a new warranty, viz: that the ship was seaworthy when she last sailed from port. But it is difficult to perceive how the contract could be made in reference to that event, since, in many instances, that period is wholly unknown to the parties, (on distant or whaling voyages for instance,) and consequently the extent of the previous risk, and the premium graduated by its length, could not be fixed.

5. Looking then to the character and purposes of the contract, to the fact that in voyage policies the warranty is a condition not dependent on the owner's knowledge or means of knowledge of the fact, but irrespective of this, is made an absolute basis of the contract; and considering further, that without this basis, the premium for the risk, and the value of the ship in case of loss, can with difficulty be fixed, no rule of policy or reason exists why the risk of the antecedent state of things should be borne by the underwriter, instead of the owner. The defendants submit, that in time policies, as well as voyage policies, the implied warranty exists.

6. If it be said that in this view of the law the owner will be left in uncertainty whether the policy attaches, and so may be left unprotected, the answer is, that this uncertainty exists in all cases of latent defects; and further, that to cover this supposed difficulty, he must procure a voyage policy relating back to the commencement of the voyage, or he may, by agreement, insert terms in his time policy covering antecedent risks, and pay the increased premium; but unless he do so, his contract is to be construed as containing the usual condition.

II. If the condition be by legal construction struck out of the policy in the case now before the court, it will defeat the intention of the parties, since the defendants can show, if the rules of law permit, that the valuation in the policy is of the vessel in a seaworthy condition, and the premium is the usual one for the period covered, and does not embrace anything for risks antecedent to the day it attached.

III. The defendants next submit, that if the court establish the rule, that in time policies attaching to a vessel at sea, there is no such warranty of seaworthiness, when the policy attaches, in regard to all those particulars which are subject to the casualties of navigation, as would apply at the outset of the voyage, yet the principle ought not to apply to unsoundness or decay of the hull, which is the subject of controversy in this suit. 1 Arn. on Ins. 669, 672.

1. This construction is in accordance with the suggestion in *Paddock* v. *Franklin Insurance Company,* that " the rule would no doubt be applied with great liberality of construction in the case supposed." (p. 232.)

2. Upon this point, which is affected by no casualties, the means of knowledge, and the judgment dependent on the employment and history of the vessel, rest peculiarly with the owner, and the reasons for the distinction between time and voyage policies would seem not to apply.

IV. Upon the point ruled by the chief justice, that subsequent want of seaworthiness would not defeat the policy unless the loss resulted therefrom, the defendants submit: That although this is the well-established rule in voyage pol-

icies, yet, if the rule be, as applied to time policies, on vessels at sea, that there is no implied warranty at the time the policy attaches, then it is but reasonable that such warranty should be held to apply as a condition so soon as the vessel arrives at a port of repair; and a non-compliance with it should *per se* defeat the policy; otherwise the policy will contain no warranty of seaworthiness at any period of the time covered. *Starbuck* v. *New England Marine Insurance Company*, 19 Pick. 198.

V. Time policies are contracts of comparatively modern growth. They are founded merely in convenience, to avoid the necessity of frequent voyage policies, and with no purpose of the parties to repeal or change the principles applicable to voyage policies. If this be so, why should not those principles be applied, at least to the extent of including the uniform condition of voyage policies, viz., that at the commencement of each voyage during the term the vessel shall be seaworthy. See the dictum of Alderson Baron, in *Small* v. *Gibson*.

SHAW, C. J. This case has been fully and ably argued, on the questions presented by the report. It was argued at the March term last year; but on account of the novelty and importance of the question, it has been held under advisement till the present term.

1. The first question is, whether in a policy on a vessel for a certain term of time, say for one year from a given day named, to the corresponding day of the ensuing year, and where the vessel is at sea on the day when the policy is to take effect, but whether seaworthy or not, is then not lost or wrecked, or essentially damaged, but in such reasonably fit condition for navigation, that she may, and afterwards does reach her port of destination and deliver her cargo in good condition, and without essential repairs, is sent on a new voyage, there is any implied warranty of seaworthiness, to the effect, that she is reasonably staunch and strong, without the replacement and renewal of her timbers and other essential parts of her structure, to bear the ordinary force of the winds and seas, and encounter the ordinary dangers of navigation for the term of one year, for which she is insured.

45 *

This question, it is obvious, is capable of being divided; namely, 1st. Whether there be any such implied warranty. 2d. Whether, if there be, it goes to the extent claimed by the defendants, viz., that she is, at the inception of the risk, reasonably strong to bear the ordinary dangers of navigation for the entire term for which she is insured. But we pass over this distinction for the present, in order to consider the general question as above stated.

We have thought it best to state the question in this form, because it is apparently a new one resulting from general principles, the various applications of which have not been determined by precedent or judicial decisions on the law and practice of insurance ; and, therefore, we have thought it sufficient to state the grounds of our present decision, leaving similar and analogous cases, varied and qualified, perhaps, by different circumstances, to be decided as they arise.

In the first place, it is distinguishable from the case of a time policy, where the vessel is in port at the time the policy is made to take effect at the inception of the risk, and first sails after the policy has attached, — whether it be from a home port, a neighboring, or a foreign port, — a place where full repairs can be obtained or not, or whether it be a desolate or savage coast, where regular repairs cannot be had.

It is distinguishable from the case of a policy made in terms to cover the latter part of a voyage already begun, and in the course of prosecution, the risk to commence on a day fixed, after the commencement of the voyage. There, inasmuch as if the underwriter had insured the vessel for the whole of such voyage, he would have been entitled to the benefit of the rule, that the assured warrants the seaworthiness of his vessel at the commencement of the voyage, it might be plausibly argued, that for the part which he did insure, he should be entitled to the like benefit, and, therefore, if the vessel was unseaworthy, at the anterior commencement of the voyage, such insurer would have a good defence on that ground. That question was suggested and partially discussed in the case of *Paddock* v. *Franklin Ins. Co.* 11 Pick. 231. But no opinion was given in that case, because none

was necessary to its decision.   That insurance, though made
in the latter part of a long whaling voyage, was not in terms
the insurance on a part of a voyage, beginning on a particu-
lar day, as we believe it has sometimes been taken to be, but
was in fact an insurance for the whole voyage, lost or not lost,
including the entire whaling cruise of the Tarquin, commenc-
ing on her departure from Nantucket, and terminating on her
arrival back at Nantucket.

There might also be another difficulty in that case, not so
much as to the right of the assured under the policy, as to
the proof of the facts.   Suppose a vessel has commenced her
voyage, ordinarily one of four months duration, on the 1st of
November, and is insured by a time policy, from January 1st
to July 1st, and never arrived at her destination.   Under such
circumstances, and after a sufficient time for intelligence to
arrive, if nothing is heard of her, the presumption is, that she
is lost, and a party insured for the voyage would have a right
to recover.   But no such presumption exists as to the time of
the loss, and therefore it would be impossible to show that
the vessel was in existence on the 1st of January, when the
policy attached.

3. A third case may arise, which perhaps may affect the
general question, which is, when the unseaworthy condition
of the vessel is known to the assured, but not communicated.
From this circumstance, it might be argued, that to do justice
to the parties, a warranty of seaworthiness should be inferred;
though, perhaps, it might seem to fall more regularly under
the head of nullity, on the ground of fraudulent misrepresen-
tation, *suppressio veri.*

The case before us, stands unsupported by any of these
considerations.   In point of fact, the vessel was at sea at the
time of the commencement of the risk; it does not appear by
the policy that it was for the part of an entire voyage, or if
it was, that any question is made of the seaworthiness of the
vessel when she sailed on the voyage, during the prosecution
of which, the policy was to attach; and when there is no
proof either way, seaworthiness at the commencement of a
voyage is to be presumed; and lastly, there is no suggestion

and no proof, that the condition of the vessel was not as well known to the underwriters, as to the assured.

Recurring then to the general question as above stated, divested of any qualifying circumstances, the court are of opinion, that in the contract of insurance on which this action is brought, there was no implied warranty on the part of the assured, that the vessel was seaworthy at the inception of the risk.

The reasons and grounds on which such a warranty is implied in a policy for a voyage, though to a considerable extent analogous, do not apply with the same strength to a time policy. The term "seaworthy," as used in the law and practice of insurance, does not mean, as the term would seem to imply, capable of going to sea or of being navigated on the sea; it imports something very different, and much more; namely, that she is sound, staunch, and strong, in all respects, and equipped, furnished, and provided with officers and men, provisions and documents, for a certain service. Now, when that is applied to a voyage, the nature, length, and extent, both of time and place, become fixed by the description of the voyage. It fixes the termini and designates all the times, places, and incidents embraced in it. It usually commences at a time and place, and under such circumstances, that all these things may be provided for. Then the term "seaworthy" becomes intelligible and definite, and means "sufficient for such a vessel and voyage." Whereas, in a time policy, no limits or termini are given, except the days named, which fix the term, which may be long or short, covering a vessel at home or at sea, and a warranty of seaworthiness would require her to be fitted and equipped, for any perils of navigation in every part of the world, in all climates and under all circumstances of war and peace. And further; such a warranty would require the vessel to be in this condition at the time the risk attaches. And it was argued in this case, that the warranty was broken, and the contract of insurance void, if the vessel was not sufficiently sound at the commencement of the term, for the entire period. And the same reasoning would apply if the term were a longer one.

Again; such a warranty, on the part of the assured, is not merely a stipulation on his part, that he will be responsible for the direct consequences of its breach; but, according to the old peculiar doctrine of warranty in the English common law, it is a rigorous, unbending condition precedent, which admits of no equivalent, and no substitute, and no excuse for a strict literal performance. If an armed merchant ship be warranted to sail from a port with twenty able-bodied seamen, and she sails with eighteen such men, and ten ordinary seamen or boys, a force greatly exceeding that warranted, the warranty is nevertheless broken. This doctrine has often been regarded as a harsh one, in many of its applications to voyage policies, working great hardship to the assured, when a loss has been caused by a peril insured against, but where the cause of loss has not had the slightest connection with the breach of the express or implied warranty relied on and admitted as a defence. But this doctrine has been applied to policies for voyages, ever since the law of insurance has grown up and taken its place as an important part of the law merchant, and during which voyage policies alone almost exclusively have been in use. This doctrine, therefore, is well established, and well understood by all parties conversant with insurance. But policies on time have recently come into use, partly, no doubt, to obviate the danger arising from the doctrine of deviation, which, though often slight, and quite immaterial to the actual risk, has often defeated contracts of insurance where there has been no increased risk, and thereby done much to prevent the benefits afforded to commerce' by honest insurance. But that any deviation terminates the risk, is necessarily incident to a policy upon a voyage, because, as there is nothing but the description of the voyage to define the liability of the insurer, if any deviation were excusable, there would be no limit to the increase of his risk, and premiums must be greatly enhanced. But the doctrine of implied warranty of seaworthiness, has not yet, we believe, been authoritatively applied to policies on time, though the contrary has not yet been fully established, and it has often been supposed to apply, from its analogy to voyage policies.

But, as the reasons, on which the rule in regard to voyage policies has been placed, are not applicable to those on time, we are of opinion that the principle which governs the one, does not either by its own force, or any strict analogy, govern the other.

2. If then we are asked, whether the assured do not come under some obligation at the commencement of the risk, and during the time for which the policy is made, we answer that we think they do, and we propose to state the nature and extent of it, in connection with the second point raised and discussed in the present case. The defendants have argued that in a time policy, whether there be any implied warranty of seaworthiness or not, at the inception of the risk, there is such implied warranty that the vessel shall be kept seaworthy during the term for which the insurance is made, or at least, that she shall be seaworthy at the commencement of every voyage or maritime adventure in which she may be employed during the term.

That there is a duty on the part of the assured, there is no doubt; but it might tend to mislead, to designate that duty a warranty of seaworthiness, for the reason already mentioned, that a warranty is a strict condition precedent to the further liability of the insurer, so that from the time of the breach, he is absolved from all obligation to pay any loss, arising from any cause. But we think the true nature, extent, and limits of such obligation on the part of the assured, and the consequences resulting from failure of the performance of them, will appear from a consideration of the nature of the contract of insurance.

By this contract, the underwriter usually for a small premium, but sometimes as in this case for a very large premium, undertakes to indemnify the ship-owner against the extraordinary perils of navigation only, such as hostile capture, fire, lightning, pirates, &c., and against the dangers arising from the unusual and extraordinary force of the winds and seas. The ordinary force of the winds and seas, sometimes very heavy, a vessel employed in navigation must be assumed to be sound and strong enough to bear, without

much damage.   Against such the insurer does not indemnify. In regard to these, to use a familiar term among nautical men, the owner stands his own insurer.   Of course, it is both the duty and the interest of the ship-owner, on every occasion on which he may put his insured vessel into a condition to en-counter the force of the elements, when she is at a place and under circumstances where full repairs can be had, or other-wise, to obtain such repairs as the place and circumstances will admit, to have her in such a condition of strength, soundness, and equipment, as to be able to encounter the ordinary force of winds and seas.   If she is not in that con-dition, and shall suffer sea-damage, it will be impossible to say that it is not attributable in whole or in part, to the insufficiency of the vessel.   If the evidence should tend to show, that the loss was caused partly by extraordinary stress of weather and partly by the insufficient condition of the vessel, it would be impossible for the insured to recover, because the degree of influence arising from each cause could not be measured, and the insurer is liable only for losses arising from extraordinary perils.   To this extent, therefore, the assured is responsible, viz : to keep his vessel whilst em-ployed, tight, staunch, and strong, when practicable, at the commencement of any maritime enterprise, to the extent of losing the benefit of his insurance in regard to all losses, to which such failure on his part may have in any degree con-tributed.   This would be the breach of an implied obligation on the part of the assured, which would defeat his right to recover any loss by sea-damage.   If it were regarded as a technical warranty, it would, for reasons before stated, be the failure to perform a strict condition precedent, and absolve the insurers from all further obligation to pay for any loss.   But treating it as a stipulation, it would leave the underwriters liable for losses for other and independent perils.

To illustrate this : suppose a vessel thus insured should go to sea from a home port for a short trip in summer, in a con-dition not tight, sound and strong, and before encountering any gale, should be struck with lightning and burnt.   If the assured were under a warranty of seaworthiness, they would

not be entitled to recover, because the vessel went to sea in an unseaworthy condition, by which the contract was terminated before the loss occurred. It would be otherwise, if the duty of the assured be regarded merely as an obligation, because their failure to perform their part of the contract did in no respect contribute to the loss actually sustained.

Such were regarded as the principles governing the rights of the assured and insurer, in a case where the vessel having been seaworthy at the commencement of a long voyage, and becomes weakened and decayed afterwards, as suggested by the court in the case of *Paddock* v. *Franklin Insurance Comvany*, 11 Pick. 233; the second point discussed. The rule there suggested was, that it was the duty of the assured, after the policy had once attached, to make his vessel seaworthy, that is, tight, staunch and strong, as far as practicable, at each stage of the voyage; but that such duty was not a technical warranty, the breach of which, would wholly terminate the policy; but merely a duty, the failure of which would discharge the underwriter from any loss arising from such want of repair. But that opinion not being necessary to the decision of that case, was left open for future consideration. The court are now of opinion, that this view was correct, and that it is strictly applicable to the present case.

In applying these rules to the present case, we are to assume that if the vessel was unseaworthy, by reason of weakness and decay, when she sailed from Savannah to Boston, that she was lost at sea by fire, a peril insured against, and that such loss was not occasioned in whole or in part, by such unseaworthiness. Upon this last point, as a question of fact, the defendants declined to go to the jury, and thereby admitted the fact as thus assumed. The result is, that as the vessel was lost within the term, by one of the perils insured against, as the underwriters had not been discharged by any breach of warranty on the part of the assured, and as the loss occurred by a peril to which any default of the assured in making repairs in no way contributed, the plaintiff is entitled to recover as for a total loss. *Judgment for the plaintiff.*